UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Linda K. Goodyear & Maxine Derouen | Civil Action No. 07-249 |
| | Judge Tucker L. Melançon |
| versus | |
| | Magistrate Judge Mildred E. Methvin |
| Dauterive Hospital of New Iberia, Louisiana | |

MEMORANDUM RULING

Before the Court is defendant's Motion to Sever [Rec. Doc. 11], plaintiffs' Opposition thereto [Rec. Doc. 15]; and defendant's Reply [Rec. Doc. 20]. For the reasons that follow, defendant's Motion [Rec. Doc. 11] will be GRANTED.

I. FACTS

On February 14, 2007, plaintiffs Linda Goodyear and Maxine Derouen filed this suit against their former employer, Dauterive Hospital of New Iberia Louisiana ("Dauterive"), alleging various acts of discrimination and harassment on the basis of their age, race, and alleged disabilities; as well as retaliation allegedly as a result of each plaintiff having engaged in protected activity, that is, reporting the alleged discrimination and/or harassment to various managers or supervisors at Dauterive. According to their Complaint [Rec. Doc. 1], both women are Caucasian, over the age of forty, and each suffers from an alleged disability: Derouen has a disability based on her "hearing loss and related issues" and Goodyear has a disability based on her "heart and related issues." (*Plaintiffs' Complaint*, ¶¶ 9, 10). Further, both Derouen and Goodyear each respectively allege that Dauterive failed to provide them with

reasonable accommodations as to their disabilities. (*Plaintiffs' Complaint*, ¶ 9).

Before commencing this litigation, Derouen and Goodyear filed their individual charges with the Equal Employment Opportunity Commission ("EEOC") complaining of the alleged discrimination and retaliation at Dauterive. (*Plaintiffs' Complaint*, ¶¶ 5,7); (*Defendant's Motion,* p. 2; Goodyear's Charge to the EEOC, *previously attached* as Ex. A to the Complaint, *attached* to Defendant's Motion as Ex. A; Derouen's Charge of Discrimination to the EEOC, *previously attached* as Ex. B to the Complaint, *attached* to Defendant's Motion as Ex. B).

On May 10, 2007, Dauterive filed this Motion to Sever [Rec. Doc. 11] plaintiffs' claims so that they will proceed independently, pursuant to Federal Rules of Civil Procedure 20(a) and 21, on the basis that: (1) plaintiffs' claims do not arise out of the same transaction or occurrence and do not involve common questions of law or fact; and (2) defendant will be prejudiced if the plaintiffs are allowed to proceed jointly in this case. (*Defendant's Motion,* p. 1).

Plaintiffs oppose severance [Rec. Doc. 15] and argue that defendant's Motion should be denied "as both Plaintiffs' EEOC charges allege discrimination and retaliation due to race, age, and disability. Further, both Plaintiffs were subjected to adverse employment consequences by the same managerial employees, namely Unit Manager Harry Bertrand and Director of Human Resources, Suzanne Minor." (*Plaintiffs' Opposition,* p. 1). Plaintiffs further contend that defendant's Motion should be denied, "without prejudice to defendant's right to reurge same, after discovery but before trial, in the event that the discovery reveals a proper basis upon which to sever each Plaintiff's claims." (*Id.*).

Defendant replies that [Rec. Doc. 20] plaintiffs' claims do not arise out of the same transaction or occurrence, but involve individualized facts requiring separate legal analysis and different witnesses and evidence, and that "severing Plaintiffs' claims will in no way prejudice Plaintiffs . . . keeping both Plaintiffs in this suit together does cause substantial prejudice to Dauterive." (*Defendant's Reply,* p. 1).

## II. STANDARD

In order for plaintiffs' cases to be properly joined under Federal Rule of Civil Procedure 20, the plaintiffs must demonstrate that both of two requirements are satisfied: first, that there is a right to relief arising out of the same transaction, occurrence or series of transactions or occurrences; and second, that there is a question of law or fact that is common to both plaintiffs that will arise in the action. Fed.R.Civ.P. 20(a); C. Wright et al., 7 FEDERAL PRACTICE AND PROCEDURE §1653 (1986). "Generally, permissive joinder of plaintiffs under Federal Rule of Civil Procedure 20 is at the option of the plaintiffs, assuming they meet the requirements set forth in Rule 20. Under Rules 20 and 21, the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice . . . This discretion, however, should be exercised after an examination of the individual case." *Applewhite v. Reichhold Chemicals, Inc.,* 67 F.3d 571, 574 (5th Cir. 1995). Courts generally consider the following factors when deciding whether claims should be severed pursuant to Rule 21: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance

were granted; and (5) whether different witnesses and documentary proof are required for separate claims. *See Thompson v. Ingalls Shipbuilding,* 2006 WL 2385324, 1 (S.D.Miss. 2006).

In determining what constitutes a single transaction or occurrence, a number of courts have looked to the interpretation of "transaction" under Federal Rule of Civil Procedure 13(a)-compulsory counterclaims. *Porter v. Milliken & Michaels, Inc.*, 2000 WL 1059849 (E.D. La. 2000) (Vance, J.) (relying on *Alexander v. Fulton County*, 207 F.3d 1303 (11th Cir. 2000); *Mosley v. General Motors*, 497 F.2d 1330, 1333 (8th Cir. 1974), and *Lott v. Eastman Kodak Co.*, 1999 WL 242688 (N.D. Tex. 1999)). "Transaction, for the purposes of Rule 13(a), 'is a word of flexible meaning . . . and may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *Porter*, at p. 2. Also, in *Weber v. Lockheed Martin Corp.*, 2001 WL 274518 (E.D. La. 2001), the Court noted that the transaction and common question requirements prescribed by Rule 20(a) are not rigid tests. (*Id.*) (relying on Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE, § 1653 (1986). In *Weber*, an employment discrimination case, the court found that judicial economy would be best served through severance of the parties. As to the transaction requirement, the court noted that there was no allegation that the alleged discriminatory actions were carried out by common actors, at a common time or with any common tactics; and the firings took place several months apart as a result of completely different activities. The court found that to try the plaintiffs' cases together would require development of proof of two discrete universes of facts, which would be highly inefficient.

Although the court found plaintiffs' Louisiana employment discrimination claim to be common to both plaintiffs, the court found that the absence of any common issues of fact outweighed overlap of law.

"The central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Thompson v. Ingalls Shipbuilding,* 2006 WL 2385324, 1 (S.D.Miss. 2006) (*citing Alexander v. Fulton County,* 207 F.3d 1303, 1322 (11th Cir.2000)(en banc). The Supreme Court of the United States has instructed lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 724 (1966).

### III. LAW & ANALYSIS

In the context of employment discrimination, courts generally have been favorable towards allowing joinder of plaintiffs' claims. *See Thompson v. Ingalls Shipbuilding,* 2006 WL 2385324, 2 (S.D.Miss. 2006) (citing *Alexander v. Fulton County,* 207 F.3d 1303, 1322 (11th Cir. 2000)(en banc);[1] *Mosley v. Gen'l Motors Corp.,* 497 F.2d 1330, 1334 (8th Cir.1974));[2]

---

[1] In the context of a class action suit, the Eleventh Circuit Court of Appeals in *Alexander v. Fulton County,* identified circumstances in a discrimination case which could cause prejudice and therefore justify severance, including, "the alleged discrimination occurr[ed] during different time period[s,] . . . different supervisors ma[d]e the challenged decisions[,] . . . or the alleged discrimination happen[ed] at geographically removed places. 207 F.3d 1303,1324 (11th Cir. 2000).

[2] In *Mosley,* the Eighth Circuit held that the district court abused its discretion when it severed the joined actions of ten plaintiffs alleging race-based employment discrimination. 497 F.2d 1330. On the other hand, joinder has been denied in cases where the prejudicial effects of other witnesses' alleged discriminatory experiences outweigh their probative value where, for example, the alleged discrimination occurs during different time periods, involves different supervisors making the challenged decisions, or the alleged discrimination happens at geographically removed places. *See Alexander,* 207 F.3d at 1324 (citing cases where joinder has been denied).

*Porter v. Milliken & Michaels, Inc.*, 2000 WL 1059849 (E.D. La. 2000). In *Porter,* each of the three plaintiffs asserted they were subjected to a pattern or practice of discrimination against black employees. The court found that their claims were properly joined even though one of the plaintiffs worked for a different supervisor from the others and on a different floor, and the defendant's alleged conduct to be common to each plaintiff's recovery. In making this determination, the *Porter* court noted federal jurisprudence in which allegations of a "pattern or practice" of discrimination satisfied the flexible same-transaction requirement. *Id*. (citing *Alexander v. Fulton County,* 207 F.3d at 1324 (11th Cir. 2000) (noting "Plaintiffs' claims stem from the same core allegation that they were subject to a systemic pattern or practice of race-based discrimination"); *Mosley*, 497 F.2d at 1333-34 (finding that "a company-wide policy purportedly designed to discriminate against blacks in employment ... arises out of the same series of transactions and occurrences")(quoting United States v. Mississippi, 380 U.S. 128 (1965)); *Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1422 (S.D.N.Y.1989) ("A company-wide policy purportedly designed to discriminate against females in employment arises out of the same series of transactions or occurrences."); *King v. Pepsi Cola Metro. Bottling Co.*, 86 F.R.D. 4, 6 (E.D. Pa.1979) ("[A]llegations of a pervasive policy of discrimination by [the employer] would bring the complaints of the individual plaintiffs under the rubric of the 'same series of transactions." '); and *Vulcan Soc'y of Westchester County v. City of White Plains Fire Dept.*, 82 F.R.D. 379, 387 (S.D.N.Y.1979) (finding transaction requirement met where plaintiffs and would-be plaintiffs claimed discriminatory policies and practices, which included a series of exams allegedly used to discriminate against blacks)).

In discussing the second prong of Rule 20, the *Porter* court noted that it "does not require all questions of law and fact raised by the dispute to be common. Rather, only "some question of law or fact must be common to all parties." *Porter,* 2000 WL 1059849 at p. 2, relying on *Alexander,* 207 F.3d at 1324 (citing *Mosley,* 497 F.2d at 1334). In short, although the plaintiffs suffered different discriminatory effects - discrimination in promotions, transfers, assignments, or discipline - because it was from the same alleged policy of discrimination, it did not preclude the court from finding a common question of law and fact. *Id; see Alexander v. Fulton County,* 207 F.3d at 1324, relying on *Mosley*, 497 F.2d at 1334 and *Blesedell,* 708 F. Supp. at 1422.

In their Complaint, Derouen and Goodyear plead the same general theories of law: race, age, and disability discrimination and retaliation; thus at first blush, prong two of Rule 20, the commonality of law (although less so of fact), seemingly is satisfied. Also, plaintiffs state that both claims arise out of the same general transaction or occurrence: "employment with defendant on the same Unit supervised by Harry Bertrand and termination sanction by Human Resources Director, Suzanne Minor." (*Plaintiffs' Opposition,* p. 2). However, defendant argues that Derouen and Goodyear's claims should be severed because they are highly individualized with each requiring separate legal analysis, witnesses, and evidentiary proof. (*Defendant's Motion*, p. 6); (*Defendant's Reply,* p. 7).

The Charge of Discrimination that each plaintiff filed against defendant with the EEOC, charging defendant with unlawful race, age and disability discrimination and unlawful retaliation, which forms the basis of each plaintiff's cause of action, alleges as follows:

1.     *Goodyear's EEOC Charge*

Goodyear's charge of discrimination to the EEOC (Charge No. 270-2005-00977), states that she began her employment at Dauterive as a Unit Clerk in June 2003 and was terminated on July 27, 2004. (Exhibit A). Goodyear claims that in March 2004, her doctor gave her a work restriction of four hours a day, not to exceed twenty hours a week. (Exhibit A). Goodyear alleges that a Mr. Harry Bertrand told her that if she did not work the full schedule she would not be allowed to work on the third floor, so she obtained a doctor's excuse to work the full hours.  However, she was then given the assignment of stocking the supply room, a task she claims was in violation of her lifting restriction. (Exhibit A). Goodyear also claims to have had problems with a black LPN, whom she could not identify in May 2004 and July 27, 2004.  She claims that the LPN would not respond to her when she called the LPN to inform her of patient medications and doctor's orders and that the LPN did not give her a stat order on July 24, 2004. (Exhibit A).

Goodyear alleges that she was discriminated against in violation of the Age Discrimination in Employment Act (ADEA) as evidenced by disparate treatment in job assignments. Essentially, it is alleged that the younger, part-time ward clerks were allowed to work whatever schedule they wanted and were not required to stock (Exhibit A).  Goodyear also alleges that she was discriminated against because of her race, Caucasian, on the basis of a statement made by the unidentified black LPN in 2004 that "no White woman could run the floor." (Exhibit A). Goodyear claims that she was discriminated against in violation of the Americans with Disabilities Act (ADA), because she was denied an accommodation in

8

accordance with her doctor's restrictions. (Exhibit A). Finally, Goodyear states that she believes that her termination was in retaliation for reporting the statement made by the black LPN. (Exhibit A).

### 2. *Derouen's Claim as per her EEOC Charge*

In Derouen's charge to the EEOC (charge number 270-2005-03238), she states that she was hired by Dauterive on December 18, 2003, as a Charge Nurse in the Acute Care Unit and that on December 30, 2004, she was terminated for a false reason. (Exhibit B). Derouen claims that from the period of June 24, 2004, through December 30, 2004, she was subjected to hostile work environment harassment by a co-worker, Cynthia Gedward, a black LPN. Specifically, Derouen claims that Gedward made negative comments concerning her age, race and disability. Goodyear claims that she reported these comments, to no avail.

In spite of the fact that both plaintiffs' claims allege discrimination and retaliation, the record before the Court and the facts set out above simply do not demonstrate that the claims arise of out of the same transaction or occurrence, or present common questions of fact so as to be favorable to joinder. As summed by defendant:

> Goodyear and Derouen worked in different jobs with different duties, pay, responsibilities and supervisors, i.e., Goodyear was a Unit Clerk and Derouen was a Registered Nurse/ Charge Nurse. Importantly, Derouen was a supervisor; Goodyear was not . . .
>
> Each claim is predicated on a separate and discrete employment decision, which was made by different supervisors under different circumstances . . .

9

> Finally, Dauterive had different reasons for terminating Goodyear and Derouen (Goodyear was terminated for her failure to manage her relationships with co-workers and Derouen was terminated for her job performance), thus requiring completely separate factual inquiry as to whether Dauterive had a legitimate, non-discriminatory reason for each plaintiff's termination and whether there is any evidence of pretext as to each plaintiff. In sum, while Goodyear and Derouen may be proceeding under the same legal theories, each of their case requires separate factual analysis as to every claim.

(*Defendant's Motion*, p. 2, 4-5). Notwithstanding the fact that the same Dauterive's human resources policies, as assumedly embodied in Dauterive Handbook and Code of Conduct, are relevant for each plaintiff, the manner/mode of discrimination that each suffered is different and the analysis of how Dauterive's policies and procedures were implemented as to each plaintiff will be decidedly different. (*See Defendant's Reply,* p.4).

Also, other than plaintiffs allegedly having the two named witnesses, Unit Manager Harry Bertrand and Director of Human Resources, Suzanne Minor, and Dauterive's policies in common, plaintiffs have not disputed defendants allegations that the claims require different, individualized witnesses and proof, "with limited duplication . . . and very little overlap in witnesses," and in fact concede that different evidence is required for each's claim. (*Defendant's Reply,* p. 2); (*Plaintiffs' Opposition,* p. 3). In support, defendant lists the names of witnesses that plaintiffs allegedly identified as pertaining to each of their cases in their EEOC charge and/or EEOC questionnaire. (*Defendant's Reply,* p. 3). In view of the record before it, the Court agrees with defendant's position, undisputed by plaintiffs, and finds that each plaintiffs' cases will involve different documentary proof, such as personnel files and other employment disciplinary records.

Defendant's further argues that severing plaintiffs' claims would avoid prejudice to Dauterive, alleging "the complexities of bringing two plaintiffs with entirely separate claims to trial together are obvious; it would cause jury confusion and multiple evidentiary problems, including determining the admissibility of evidence (like anecdotal evidence of discrimination) that pertains to one plaintiff's case, but not the other" (*Defendant's Reply,* p. 6). Plaintiffs concede that because of the separate factual analysis and evidence required for each plaintiffs' claims, there is potential for jury confusion. (*Plaintiffs' Opposition,* p. 3).

Finally, plaintiffs contend that settlement and judicial economy would be better facilitated if the claims are allowed to proceed together. (*Plaintiffs' Opposition,* p. 2). Defendant argues that the parties are not contemplating settlement at this point and "[r]egardless, settlement of employment discrimination claims are necessarily individualized as they involve back pay and front pay calculations, which are different for each plaintiff since they were in different jobs and salaries; one was a supervisor, one was an employee. (*Defendant's Reply,* p. 5). The Court finds that plaintiff's argument regarding settlement is of no moment, and other than requiring separate trials, there is no evidence that severing plaintiffs' claims would facilitate judicial economy or otherwise overburden the judicial system in any substantial way. (*Id.*). To the contrary, the Court finds, based on the record before it and for the reasons previously set out, that judicial economy will *likely* be served by severance of the plaintiffs' claims.

Recognizing that the general issues or theories of law may in fact be common to both

cases, to the extent both claims involve application of established federal race, age and disability discrimination and retaliation jurisprudence, the operative facts under plaintiffs' claims are significantly different and will require separate factual analysis as to every claim: as for the racial discrimination, each plaintiff allegedly suffered different acts of racial harassment by different alleged harassers; as for the age discrimination, each plaintiff allegedly suffered from different adverse employment action; and as for the disability claims, each plaintiff had different jobs with different required duties functions, as well as different disabilities requiring individualized accommodation. (*Defendant's Motion*, p. 5). Therefore, in the interest of fairness, judicial economy and potential prejudice to both plaintiffs and defendant, plaintiffs' claims should be severed.

## IV. CONCLUSION

The Court finds that each plaintiff has an individualized claim of race, age and disability based discrimination and retaliation, requiring largely different witnesses and evidence; each plaintiff's claims for damages will be individualized as well. Given the separate and distinct factual basis for the claims of discrimination and retaliation, and the individualized proof necessary to support each claim, the Court finds that joining the plaintiffs is more likely to confuse the jury and that severance would avoid undue prejudice. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1296-97 (9th Cir.2000); *Delce v. Amtrak and Resco Holdings, Inc.,* 180 F.R.D. 316, 319 (E.D. Tex.1998); *Henderson v. AT & T Corp.,* 918 F.Supp. 1059, 1062 (S.D. Tex.1996). Although severing the claims will result in a greater number of trials, severance

will allow the Court to better manage and resolve the individual claims of plaintiffs.

In order to manage these cases in an effective and economical manner, the Court finds that the claims of the individual plaintiffs, Linda K. Goodyear and Maxine Derouen, should be severed into separate causes of action.  The Court will direct the Clerk of this Court to assign a separate case number for plaintiff, Maxine Dereouen's action;  all deadlines set by the Scheduling Order that issued herein on July 5, 2007 [Rec. Doc. 21] will remain in effect for both cases, with the exception of the trial on the merits of Maxine Dereouen.  The trial of Maxine Dereouen's case will be upset and rescheduled for July 21, 2008.